**Patricia GASSLEIN, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Defendant.**

**No. 95–172–CIV–ORL–18.**

United States District Court, M.D. Florida, Orlando Division.

Oct. 31, 1995.

Philip J. Snyderburn, Snyderburn, Rishoi & Swann, Winter Park, FL, for plaintiff.

Guy W. Harrison, Kimbrell & Hamann, P.A., Miami, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Defendant's motion for summary judgment (Doc. 16). Plaintiff Patricia Gasslein (Gasslein) sued Defendant National Union Fire Insurance Company of Pittsburgh (National Union) to collect on an arbitration judgment from American Pacific Securities Corporation (American Pacific), one of National Union's insureds. Though Gasslein was not a named insured under the policy that National Union issued to American Pacific, Gasslein argues that she is entitled to sue in her own capacity as a third-party beneficiary. National Union contends that because the insurance policy it issued to American Pacific was a fidelity insurance policy and not a liability policy, it is only obligated to compensate American Pacific directly for its losses. The court concludes that the terms of National Union's fidelity insurance policy with American Pacific proscribes Gasslein's suit to collect on the policy, and grants Defendant's motion.

### 1. Facts

For the purposes of this motion, the material facts are undisputed. Patricia Gasslein is a retired nurse living in Seminole County, Florida. She was involved in an automobile accident and received settlement proceeds in early 1989. In February 1989, Sidney Griffin (Griffin), a securities salesman with Ameri-

can Pacific, a brokerage company, solicited Gasslein to invest $89,000 of her settlement proceeds with him. In April 1989, Griffin left American Pacific and began working at Andover Securities, another brokerage firm. Griffin died unexpectedly in January 1992. Gasslein discovered in May 1992 that Griffin had lost all of her money through a fraudulent scheme. Gasslein then commenced an arbitration procedure against American Pacific and Griffin's estate. Gasslein advised National Union of the arbitration so that National Union might protect its interests, but National Union responded by asserting that Gasslein had no rights under American Pacific's insurance policy. Gasslein did not make National Union a party to the arbitration.

On September 24, 1993, an arbitration panel entered an award of $338,342.94, plus reasonable attorneys' fees, in favor of Gasslein and against American Pacific. However, American Pacific had filed for bankruptcy under Chapter 7 in November 1992, and under the provisions of the Bankruptcy Code the arbitration award could not be enforced. On August 24, 1994, Gasslein and American Pacific's bankruptcy counsel entered into a stipulation in which Gasslein agreed not to seek any relief against American Pacific and waived whatever right American Pacific owed her. Gasslein settled this claim so that she could "pursue any and all rights . . . she has . . . against [American Pacific's] securities dealer blanket bond issued by [National Union], but only to the extent that there are insurance proceeds for any alleged liability of [American Pacific]." As a result of the agreement, American Pacific has not reimbursed Gasslein for any of her losses, despite the arbitration award against it, and has never made a claim under its policy with National Union. With the approval of American Pacific's bankruptcy counsel, who knew American Pacific would not be responsible for reimbursing Gasslein for her losses, a probate court entered a final judgment against American Pacific on February 2, 1995.

American Pacific was a registered securities dealer with the National Association of Securities Dealers, Incorporated (NASD).

In keeping with NASD requirements under its Rules of Fair Practice, National Union issued American Pacific a fidelity bond covering its losses due to its employees' improper acts from 1983 until August 1989. In Section Four of the policy the parties declare,

> This bond is for the use and benefit only of the Insured ... and the Underwriter shall not be liable hereunder for loss sustained by anyone other than the Insured unless the Insured, in its sole discretion and at its option, shall include such loss in the Insured's proof of loss. At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars.

Parties' Factual Stipulation, Exhibit One at p. 8. American Pacific has never filed a proof of loss with National Union to collect on its policy with regard to Gasslein's suit.

## II. Legal Discussion

Gasslein brought this action to recover her losses to the extent of American Pacific's policy with National Union. Gasslein is suing as a third party beneficiary under the insurance policy, and asserts a right to proceed against National Union in place of American Pacific. National Union raises a number of defenses, any one of which might preclude its liability to Gasslein. National Union first asserts that Gasslein has no right to sue under the insurance agreement, because Gasslein was neither a party to the agreement nor a named beneficiary. Second, National Union contends that American Pacific did not suffer any loss to trigger reimbursement under the bond, because American Pacific did not have to pay any money to Gasslein. Finally, National Union argues that American Pacific did not discover Gasslein's loss while American Pacific's policy was in effect.

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513-14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *Celotex,* 477 U.S. at 323-24, 106 S.Ct. at 2552-53; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. *Gasslein's Right to Sue*

■ National Union first contends that Gasslein has no right to sue individually under the insurance agreement between National Union and American Pacific, because Gasslein was neither a party to the agreement nor a named insured, and the agreement does not create a liability insurance policy. Because the policy is a fidelity bond, National Union argues that the bond does not create rights enabling third persons to sue an insurer directly.

National Union cites two cases from the old Fifth Circuit Court of Appeals interpreting Florida law to support its position. The Eleventh Circuit has accepted as binding precedent all Fifth Circuit cases decided before the circuit split in 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc). In *American Empire Ins. Co. of South Dakota v. Fidelity and Deposit Co. of Maryland,* 408 F.2d 72 (5th Cir.1969), the Fifth Circuit interpreted a fidelity insurance contract designed to reimburse named insureds for sustained losses. Rejecting the intervenors' argument that unnamed third parties should be permitted to sue the fidelity insurer directly, the court stated, "[A] distinction must be drawn between indemnity and property insurance. The fidelity bond was an indemnity insurance contract. The insurer's liability does not arise until the insured has suffered a proven loss." *Id.* at 77. Following this logic, the court held, "We are of the firm view that [the insurer's] contract meant just exactly what it said, that is, that it insured the named corporations and those corporations only, against the defalcations of their employees." *Id.* In so holding the court declined to extend to fidelity insurance Florida's liberal rule permitting third-party beneficiaries to sue insurers directly on liability insurance contracts.

Similarly, in *Everhart v. Drake Mgmt., Inc.,* 627 F.2d 686 (5th Cir.1980), the court again distinguished fidelity bonds from liability insurance contracts. "The blanket fidelity bond issued by Insurer protects against losses sustained by [the insured] due to fraudulent acts or omissions of its own employees.... Fidelity insurance undertakes to protect the assured against loss incurred by the assured or any predetermined specified group.... [The Florida] cases extending coverage under a liability policy is not applicable to fidelity bond contracts where the parties, whose losses are insured, are readily defined, specified and predictable." *Id.* at 691–92.

Since National Union issued a fidelity bond to American Pacific to protect the company from losses caused by its employees, these precedents appear to control this case. Like the bonds discussed in the cases above, American Pacific's policy with National Union states that the bond "is for the use and benefit only of the Insured...." Parties' Factual Stipulation, Exhibit One at p. 8. Although the policy in Section Four does provide for reimbursement of other parties' losses, the agreement makes clear that American Pacific must submit a proof of loss to National Union in order for anyone to recover any money under the policy. The court therefore determines that National Union's policy is a fidelity insurance policy analogous to those in *American Empire* and *Everhart.*

■ Gasslein asserts that because securities dealers are required by law to maintain fidelity bonds, and that because they are so required in order to protect investors, *American Empire* and *Everhart* should not apply to this case. In both *American Empire* and *Everhart,* the blanket fidelity bonds were not statutorily required. Securities dealers, however, must retain indemnity insurance. The court acknowledges Gasslein's evidence which establishes that statutory requirements exist to protect investors from fraud. However, Gasslein presents no authority to justify any distinction between this case and *American Empire* and *Everhart.* The one precedent that Gasslein cites, *Pickett v. Carolina Casualty Ins. Co.,* 734 F.2d 792 (11th Cir.1984), deals with a statutorily-required *liability* insurance policy. That distinction has been recognized by the Eleventh Circuit when considering whether a third-party beneficiary should be entitled to sue on his own behalf. *Mitchell, Green, Pino & Medaris v. Underwriters at Lloyd's of London,* 858 F.2d 702, 705 (11th Cir.1988). For the reasons cited by the Fifth Circuit interpreting Florida law, the rules that apply to liability poli-

cies do not apply to fidelity bonds. Gasslein cannot suggest any other authority to permit unnamed beneficiaries to sue a fidelity insurer directly. The court concludes that Gasslein cannot sue National Union under this insurance policy.

### III. Conclusion

The court concludes that under *American Empire* and *Everhart* Gasslein has no independent right to sue National Union to recover on its fidelity bond with American Pacific. Fidelity bonds like the one in this case are designed to protect the named insureds from losses sustained by their employees' wrongful conduct, and third parties' losses are not directly covered by such agreements. Because the court concludes that Gasslein has no right to sue National Union, the court need not consider National Union's other defenses. The court **GRANTS** National Union's motion for summary judgment (Doc. 16), and instructs the clerk to enter judgment accordingly.

It is **SO ORDERED.**